IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| CENTER FOR PUBLIC INTEGRITY,<br><br>                    Plaintiff,<br><br>        v.<br><br>U.S. DEPARTMENT OF STATE,<br><br>                    Defendant. | )<br>)<br>)<br>)<br>)<br>)  Civil Action No. 1:05-cv-02313 (JDB)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF A MOTION FOR AN OPEN AMERICA STAY, OR IN THE ALTERNATIVE, AN EXTENSION OF TIME**

PETER D. KEISLER
Assistant Attorney General

KENNETH L. WAINSTEIN
United States Attorney

ARTHUR R. GOLDBERG
Assistant Director
Federal Programs Branch

AMY E. POWELL
Attorney (NY Bar)
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, D.C. 20530
Telephone: (202) 514-9836
Facsimile: (202) 616-8202
Email: amy.powell@usdoj.gov

**TABLE OF CONTENTS**

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    A.    The Processing of FOIA Requests at the State Department . . . . . . . . . . . . . . . . . 2
    B.    State Department Backlog Reduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    C.    The Plaintiff's Requests . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        1.    Country Operating Plans Request . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        2.    Partner Contracts Request (Request No. 200504795) . . . . . . . . . . . . . . . 7
        3.    Ambassador Tobias Requests . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
        4.    Requests for Information Systems . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    I.    The Legal Standard for a Stay of Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    II.    The State Department Can Demonstrate Exceptional Circumstances . . . . . . . . . . . . 12
        A.    Despite Inadequate Resources and Increasing Volumes of FOIA Requests, the State Department is Making Reasonable Progress on its Backlog . . . . . 12
        B.    The State Department Has Exercised Diligence in the Processing of CPI's Requests
            . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
        C.    The State Department is Entitled to a Stay of Proceedings Until June 30, 2006
            . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
    III.    Alternatively, the Court May Grant an Extension of Time . . . . . . . . . . . . . . . . . . . 16

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## INTRODUCTION

In September and October 2005, plaintiff Center for Public Integrity ("CPI") submitted seven separate requests to defendant United States Department of State ("State Department"), pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. These requests seek varied and voluminous records pertaining to the President's Emergency Plan for AIDS Relief ("PEPFAR"), and two electronic information systems used by the State Department for budget planning. On November 30, 2005, plaintiff filed a complaint seeking production of responsive documents. Because defendant State Department has not completed processing of plaintiff's FOIA requests, the State Department now seeks a stay of the proceedings up to and including June 30, 2006 in order to allow the orderly processing of plaintiff's requests in the order received, consistent with the principles established in Open America v. Watergate Special Prosecution Force, 547 F.2d 605 (D.C. Cir. 1976).

The State Department can demonstrate exceptional circumstances justifying a stay of the proceedings because, despite unforeseeable increases in FOIA requests and recent budget cuts, the State Department has made reasonable progress in reducing its backlog. Moreover, the defendant has worked diligently to make significant progress in locating and reviewing records responsive to plaintiff's requests. To date, five of the seven requests have been completely processed and nearly a thousand pages produced. Of the two remaining requests, one will be completed within the next few weeks. The remaining request, which is the most voluminous, involves a time-consuming and intensive review process for over 10,000 pages, and it is for the purpose of completing this review that the defendant is seeking additional time. Moreover, to require the defendant to complete processing of this request more quickly and out of order would be unfair to other requesters. Accordingly, the Court should grant this motion for a stay of the proceedings until June 30, 2006.

Alternatively, the Court should grant the defendant an extension of time to complete processing of plaintiff's requests before proposing a briefing schedule. The proposed extension is a short one, requested to allow orderly completion before the parties file dispositive motions. Plaintiff has not, and cannot, demonstrate any prejudice from the short extension of time requested. Accordingly, in the exercise of its discretion, the Court may, in the alternative, grant the defendant an extension of time.

## BACKGROUND

A. THE PROCESSING OF FOIA REQUESTS AT THE STATE DEPARTMENT

The Declaration of Margaret G. Peppe describes in detail the procedures adopted by the State Department for the orderly and efficient processing of FOIA requests. See Declaration of Margaret G. Peppe, attached hereto as Exhibit A ("Peppe Decl."); see also U.S. Department of State Freedom of Information Act, 2004 Annual Report, available at http://foia.state.gov/anrept04.asp. The Office of Information Programs and Services ("IPS") oversees the processing of FOIA requests.

In general, IPS processes requests in four stages: (1) receipt and acknowledgment, (2) search and retrieval, (3) review, and (4) response and release. See Peppe Decl. ¶ 20. At each stage, IPS processes requests on a "first in, first out" basis, but there are two tracks: simple/fast and routine/complex. See id. ¶ 21; see also 22 C.F.R. § 171.12(e). Requests are assigned to a particular track based upon the amount of time and effort needed to process the request. Id. An exception to this queue system is made where a requester has demonstrated a "compelling need" warranting expedition. See Peppe Decl. ¶ 22; see also 22 C.F.R. § 171.12(b). Because granting a request for expedition "necessarily works to the disadvantage or other requesters whose requests were filed earlier," the Department "sparingly grants requests for expeditious handling." Peppe Decl. ¶ 23.

Upon receipt, the Requester Communications Branch assigns a FOIA request to a particular

2

track and acknowledges it by mail. See Peppe Decl. ¶ 25. Second, the Statutory Compliance and Research Division evaluates the request subject, determines where the requested records may be located, and initiates a search of those records systems which may contain responsive records. See id. ¶¶ 26-34. After the collection of potentially responsive documents has been transmitted to IPS and scanned into the Freedom of Information Act Document System, they are reviewed line-by-line by the appropriate personnel within the Statutory Compliance and Research Division or by personnel from the offices maintaining decentralized records. See id. ¶¶ 35-37. When necessary, other agencies are consulted. See id. ¶ 39. Finally, the Compliance and Research Division performs a quality control check, makes copies, assesses fees, and corresponds with the requester as necessary. See id. ¶ 38.

B.   STATE DEPARTMENT BACKLOG REDUCTION

At the end of fiscal year 2001, the State Department had a backlog of 6,845 FOIA requests, a number which steadily decreased for the next three years. See U.S. Department of State Freedom of Information Act 2002 Annual Report, available at http://foia.state.gov/anrept02.asp (6,845 requests pending at end of 2001, 5,343 pending at end of 2002); U.S. Department of State Freedom of Information Act 2004 Annual Report, available at http://foia.state.gov/anrept04.asp (3,008 requests pending at end of 2003; 1,996 pending at end of 2004). These reductions were achieved by aggressive backlog reduction initiatives, resulting in the processing of over 11,500 requests in two years, and the cutting of the backlog by over eighty percent. See Peppe Decl. ¶ 11.

When the State Department was facing a backlog of over 6000 requests, the Department began a massive program to reorganize and improve public access to information. See Peppe Decl. ¶¶ 7-11. A temporary backlog reduction task force (supported by 23 full-time staff and $4 million) was employed for two years in order to drastically reduce the FOIA backlog. See id. ¶ 9. In

combination with other improvements, the task force both made permanent improvements to IPS and reduced the backlog by over 80% in two years, which exceeded expectations. See id. ¶ 11. IPS has supplemented its staff resources on an ongoing basis as well by employing retired Senior Foreign Service Officers and university students on a part-time basis, and two Presidential Management Fellows. See id. ¶¶ 7-8.

Additionally, IPS has upgraded the technology used in its information management and access programs, including the management of the full-text-searchable State Archiving System and the development of the Freedom of Information Document System. See Peppe Decl. ¶¶ 12-15. IPS has also developed its website, which now provides the public with automatic electronic access to a continuously growing collection of State Department documents, information about the Department's records and how to file a FOIA request, as well as an online FOIA request form. See Peppe Decl. ¶¶ 16-18. IPS continuously engages in ongoing efforts to streamline and upgrade its information management. See id. ¶¶ 3, 11, 19.

Notwithstanding the ongoing efforts at backlog reduction, the backlog has increased somewhat since the backlog reduction taskforce was defunded in 2004, due to the exceptional circumstances described below, but the backlog volume – about 3400 requests – remains far below 2002 levels. See Peppe Decl. ¶ 11. This recent re-emergence of the backlog is explained by increasing numbers of FOIA requests and other responsibilities at the same time the budget is being cut. For example, in fiscal year 2004, the number of new direct FOIA and Privacy Act requests increased by 19 percent, and in fiscal year 2005, the numbers increased by an additional 26 percent over the previous year. Peppe Decl. ¶ 43.

IPS's other responsibilities have also increased. IPS has received "an increase of complex, time-sensitive, and time-consuming document demands from the Congress, criminal prosecutors and

4

other investigative bodies, and pursuant to court order." Peppe Decl. ¶¶ 44-45. IPS is currently working on seventy-nine such requests. Id. For example, just within the last year, IPS has processed over 60,000 pages in response to requests from other government agencies regarding the United Nations' Oil-for-Food Program, and has processed over 80,000 pages in response a recent congressional request related to the Soros network. See id. ¶ 45. Finally, IPS has tripled its systematic review of historical records in order to meet the December 31, 2006 deadline for the review and transfer of classified records over 25-years-old. See id. ¶ 46. At the same time as these increased demands have been placed on IPS resources, the two-year backlog reduction taskforce has come to an end, and the information access budget for the State Department has been cut substantially. Id. ¶ 47.

Notwithstanding the recent increase in the backlog, the overall backlog is still roughly half what it was at the end of fiscal year 2001. Compare Peppe Decl. ¶ 11 with U.S. Department of State Freedom of Information Act 2002 Annual Report, available at http://foia.state.gov/anrept02.asp. Moreover, IPS is demonstrably committed to longterm improvement of information access, streamlining of FOIA processing and upgrading technology. See Peppe Decl. ¶¶ 3, 11, 12-13. IPS's recent reorganization efforts and long-term planning all target long-term reduction and effective management of the backlog of pending FOIA requests. Id.

C. THE PLAINTIFF'S REQUESTS

    1.    Country Operating Plans Request (Request No. 200504053)

In its first letter dated September 16, 2005, CPI requested the "Country Operating Plans for all 15 countries receiving funding from [PEPFAR, including] activities to be implemented during the fiscal year, along with the associated activity descriptions, funding levels, indicator targets and implementing partners." Compl. ¶ 5; Peppe Decl. Attach. 1. This first letter further indicated CPI's

5

expectation that the Country Operating Plans include "the comprehensive list of community-based organizations (CBO), faith-based organizations (FBO), and non-governmental organizations (NGO) currently funded through [PEPFAR] in each of the 15 countries." Id.

By letter dated September 26, 2005, IPS acknowledged this request, which falls within the routine request track. See Peppe Decl. Attach. 2. In January, IPS initiated a search in several offices, but it was subsequently determined that a complete set of responsive records was located in the Office of the Global AIDS Coordinator. See Peppe Decl. ¶¶ 50-51. By letter dated February 7, 2006, IPS notified the plaintiff that the request was being processed and that significant portions of the information requested were available on the Global AIDS Coordinator's website. See id. Attach. 3; see also http://www.state.gov/s/gac/. Currently, all of the potentially responsive documents, constituting over 10,000 pages in paper form, have been compiled and are currently under review by the appropriate personnel. See id. ¶ 51. These potentially responsive documents comprise Country Operating Plans from three years for fifteen countries and hundreds of partners. Id. The Country Operating Plans are detailed financial and policy planning documents for a large international grant program, and they may contain privileged and private information. The careful, line-by-line review of these documents is absolutely necessary in light of the sensitive information involved, and is likely to take the most time and effort to complete. See id. ¶ 85.

By letter dated February 17, 2006, plaintiff purported to "clarify" its original request, specifically requesting "production of all responsive records from the Country Operational Plan and Reporting System (COPRS)." See id. Attach. 4. This letter further noted that "[p]roduction of the COPRS database" would satisfy its request for the Country Operating Plans in electronic form. See id. In light of CPI's latest request for the COPRS system, IPS and the Office of the Global AIDS Coordinator are considering what, if any, information within the COPRS system is responsive to the

6

original request. See Peppe Decl. ¶ 54. This issue is complicated by questions about whether COPRS itself is releasable under applicable privileges, and whether the system is readily reproducible.

IPS expects the review and release of the Country Operating Plans, as currently under review and not including COPRS, to be completed by June 30, 2006. Id. ¶ 85.[1] The defendant is requesting a stay until June 30, 2006 only for the purpose of processing this request, as all other requests have been completed or will be shortly.

2. Partner Contracts Request (Request No. 200504795)

In a separate letter dated October 18, 2005, CPI requested "[a]ll contracts made in relationship to [PEPFAR] since the creation of the plan through the date on which you process this request." Compl. ¶ 6; Peppe Decl. Attach 14. IPS acknowledged the request by letter dated December 23, 2005, and the request fell within the routine track. See Peppe Decl. Attach 15. IPS initiated a search in January 2006, and discovered that the Office of the Global AIDS Coordinator does not routinely possess programmatic contracts. See id. ¶¶ 68-69. By letter dated February 3, 2006, IPS informed plaintiff that the Office of the Global AIDS Coordinator does not conclude or administer contracts of a programmatic nature and requested clarification as to whether plaintiff was seeking the administrative contracts related to the Global AIDS Coordinator's Washington, D.C. office. See id. Attach 16. By letter dated February 10, 2006, CPI modified its request to seek "any list or index or register or document containing [some or] all contracts, grants and/or agreements that have been made in relation to [PEPFAR]." See id. Attach 17. By letter dated February 17, 2006,

---

[1] That estimate does not include production of the COPRS records because defendant believes that its initial search retrieved a complete set of responsive records. We continue to confer with the plaintiff and are hopeful that the COPRS issue can be resolved prior to June 30, 2006.

IPS acknowledged receipt of the revised request. See id. Attach 18. IPS has now completed the search for potentially responsive documents, which are currently under review, and IPS anticipates releasing any responsive documents within the next few weeks. See Peppe Decl. ¶ 73.

    3.    <u>Ambassador Tobias Requests</u> (Requests Nos. 200504788, 200505170, 200600082)

Three additional letters dated October 18, 2005 requested documents related to Ambassador Randall L. Tobias, head of the Office of the Global AIDS Coordinator, including: "any and all log(s) of correspondences (email and mail) sent and received by Ambassador Randall L. Tobias, U.S. Global AIDS Coordinator, between October 6, 2003, and the date on which you process this request;" "[a]ll appointment logs, appointment calendars, calendars of meetings, daily agendas and other similar records for Ambassador Randall L. Tobias . . . between October 6, 2003, and the date on which you process this request;" and "[a]ll records of telephone logs reflecting incoming or outgoing calls by Ambassador Randall L. Tobias . . . any any telephone message clips and notes related to or indicating invitations or attendance at telephonic conference calls that were created by or on behalf of Ambassador Randall L. Tobias between October 6, 2003, and the date on which you process this request." Compl. ¶¶ 7-9; Peppe Decl. Attach 11, 19, 21. IPS acknowledged receipt of each of these requests by separate letters dated December 23, 2005 and January 11, 2006. Peppe Decl. Attach. 12, 20, 22.[2] IPS initiated a search of the Office of the Global AIDS Coordinator for these records when the requests came up in the queue. That search has been completed, all potentially responsive correspondence logs, appointment calendars, and telephone logs have been located, and all responsive documents – comprising nearly 1,000 pages – were released to the

---

    [2]    As explained in the Peppe Declaration, IPS initially grouped the request for correspondence logs with another request for the purposes of processing. IPS later decided that the request should be processed separately, opened a separate file, and sent the January 11, 2006 acknowledgement letter. See Peppe Decl. ¶ 83.

8

plaintiff under a cover letter dated March 13, 2006.  See Peppe Decl. ¶¶ 64-65, 72-73, 77-78, 85.

    4.    <u>Requests for Information Systems</u> (Requests Nos. 200504758, 200504760).

Two additional requests, also dated October 18, 2005, were not limited to information related to PEPFAR.  These requests sought "[a] copy of the Department of State International Affairs Database (IAD) for all available years" and "[a] copy of the Department of State Central Resource Management System (CRMS) for all available years."  See Compl. ¶¶ 10-11; Peppe Decl. Attach. 5, 8.  By letter dated December 23, 2005, IPS acknowledged these requests.  See Peppe Decl. Attach. 6-7, 9.  Both IAD and CRMS are internal budget planning systems; generally speaking, IAD covers the Department's foreign operating budget, and CRMS covers the Department's domestic operating budget.  By letters dated January 4, 2006 and January 17, 2006, IPS informed plaintiff of the nature of these databases and directed plaintiff to the substantial, publicly available final budget information (which is generated using these systems).  See id. Attach. 7, 10.  IPS has otherwise denied these requests.  See Peppe Decl. ¶¶ 57, 60.

**ARGUMENT**

I. THE LEGAL STANDARD FOR A STAY OF PROCEEDINGS

Under FOIA, an agency is required to determine within twenty days of the receipt of a request for records "whether to comply with such request[,]" and to "immediately notify the person making such request of such determination and the reasons therefor."  5 U.S.C. § 552(a)(6)(A)(i).  This time limit can be extended by ten working days if the agency determines that "unusual circumstances" exist.  5 U.S.C. § 552(a)(6)(B).  Exhaustion of administrative remedies is a prerequisite under FOIA. See Stebbins v. Nationwide Mutual Ins. Co., 757 F.2d 364, 366 (D.C. Cir. 1985).  As a general rule, however, if an agency does not respond within the statutory time limit, a plaintiff will be deemed to have "constructively" exhausted administrative remedies, and may proceed directly to court, without

9

having to "actually" exhaust.  5 U.S.C. § 552(a)(6)(C).

Nevertheless, FOIA explicitly contemplates the possibility of a stay of judicial proceedings at the district court level.  5 U.S.C. § 552(a)(6)(C)(i) provides a special "'safety valve'" for FOIA:

> If the Government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time to complete its review of the records.

See Appleton v. FDA, 254 F. Supp. 2d 6, 8 (D.D.C. 2003) (quoting Open Am. v. Watergate Special Prosecution Force, 547 F.2d 605, 610 (D.C. Cir. 1976)).  Effective October 2, 1997, as part of the Electronic Freedom of Information Act Amendments of 1996, Congress clarified that "the term 'exceptional circumstances' does not include a delay that results from a predictable agency workload of requests under this section, unless the agency demonstrates reasonable progress in reducing its backlog of pending requests."  See 5 U.S.C. § 552(a)(6)(C)(ii), (iii).

The leading case construing section 552(a)(6)(C) is Open America v. Watergate Special Prosecution Force, 547 F.2d 605 (D.C. Cir. 1976).  In that case, the Court of Appeals for the D.C. Circuit held that an agency is entitled to additional time to process a FOIA request under § 552(a)(6)(C) when it:

> is deluged with a volume of requests for information vastly in excess of that anticipated by Congress, when the existing resources are inadequate to deal with the volume of such requests within the time limits of subsection (6)(A), and when the agency can show that it "is exercising due diligence" in processing the requests.

Id. at 616 (quoting 5 U.S.C. § 552(a)(6)(C)).  See also Oglesby v. Department of the Army, 920 F.2d 57, 64 (D.C. Cir. 1990) ("Frequently, if the agency is working diligently, but exceptional circumstances have prevented it from responding on time, the court will refrain from ruling on the request itself and allow the agency to complete its determination.").  Courts in this circuit have interpreted this 'exceptional circumstances' provision as excusing any delays encountered in

10

responding to a request as long as the agencies are making good-faith efforts and exercising due diligence in processing requests on a first-in, first-out basis." Appleton, 254 F. Supp. 2d at 8 (citing Open Am., 547 F.2d at 616); Edmond v. United States Attorney, 959 F. Supp. 1, 3 (D.D.C. 1997) ("Courts have uniformly granted the government reasonable periods of time in which to review FOIA requests when there is a backlog"); Ohaegbu v. FBI, 936 F. Supp. 7, 8 (D.D.C. 1996); Kuffel v. United States Bureau of Prisons, 882 F. Supp. 1116, 1127 (D.D.C. 1995) (courts in the D.C. Circuit "have interpreted [section (a)(6)(C)] as excusing any delays encountered in responding to a request as long as the agencies are making a good faith effort and exercising due diligence in processing the requests on a first-in first-out basis" ) (citations omitted).  An additional factor that may be considered in determining whether "exceptional circumstances" exist include the "[r]efusal by a person to reasonably modify the scope of a request or arrange an alternative time frame for processing the request."  5 U.S.C. §  552(a)(6)(C)(iii).

The 1996 Amendments to FOIA affirmed the proposition in Open America v. Watergate Special Prosecution Force, 547 F.2d 605 (D.C. Cir. 1976), that stays should be granted to agencies deluged with FOIA requests, and clarified that even a "predictable agency workload of requests" constituted "exceptional circumstances" when an agency could demonstrate that it was making progress in reducing its backlog.  See, e.g., H.R. Rep. No. 104-795, at 24, reprinted in 1996 U.S.C.C.A.N. 3448, 3467 (noting that the FOIA Amendments were "consistent" with the holding in Open America).  Consequently, the 1996 FOIA Amendments did not eliminate the opportunity for overworked federal agencies to obtain a stay of proceedings; instead, the amendments merely modified the showing that was required for such a stay.  The 1996 Amendments were not meant to overturn Open America but rather "merely explain that predictable agency workload and a backlog alone, will not justify a stay."  Al-Fayed v. CIA, No. 00-2092, slip op. at 5 (D.D.C. Jan. 16, 2001,

11

attached hereto as Exhibit B).

The <u>Open America</u> decision recognized that the "real parties at interest" were not the ones before the Court but the "other persons or organizations who made requests prior" to the plaintiff's request. <u>Open Am.</u>, 547 F.2d at 614. "If everyone could go to court when his request had not been processed within thirty days, and by filing a court action automatically go to the head of the line at the agency, we would soon have a listing based on priority in filing lawsuits, <u>i.e.</u>, first in court, first out of the agency." <u>Id</u>. at 615. A plaintiff is not entitled to cut in line solely because it filed a lawsuit. Rather, a "plaintiff bears the burden of showing a genuine need and reason for urgency in gaining access to Government records ahead of prior applicants for information." <u>Edmond v. United States Attorney</u>, 959 F. Supp. 1, 3 (D.D.C. 1997) (internal quotations omitted).

II. THE STATE DEPARTMENT CAN DEMONSTRATE EXCEPTIONAL CIRCUMSTANCES

The State Department more than meets the legal standard for obtaining an <u>Open America</u> stay of the proceedings. As required under <u>Open America</u>, the State Department maintains a first-in, first-out queue system for the processing of FOIA requests. <u>See</u> Peppe Decl. ¶ 23. The resources available to IPS have been curtailed substantially at a time when its FOIA and declassification responsibilities are increasing. The State Department's request for a modest extension, only to complete processing of the plaintiff's most voluminous request, is more than reasonable; it is necessary to prevent unfair results to other requesters.

A. DESPITE INADEQUATE RESOURCES AND INCREASING VOLUMES OF FOIA REQUESTS, THE STATE DEPARTMENT IS MAKING REASONABLE PROGRESS ON ITS BACKLOG

To obtain a stay, an agency only needs to show "reasonable progress in reducing its backlog." 5 U.S.C. § 552(a)(6)(C)(ii). However, reasonable progress "does not require that annual backlog reductions be uniform." <u>Appleton</u>, 254 F. Supp. 2d at 10. The <u>Appleton</u> Court, for example, did not

find it problematic that the agency's backlog "decreased by increasing smaller margins from fiscal year 1998 to fiscal year 2001, and actually increased by 971 requests in fiscal year 2000." Id.

As discussed above, for the two years preceding the end of fiscal year 2004, the State Department dramatically reduced its backlog – from over 6,000 requests to under 2,000 requests. See Peppe Decl. ¶ 11. At the same time, IPS streamlined the processing of FOIA requests, making permanent and ongoing improvements to public information access from the State Department. See id. ¶¶ 7-18.

This exceptional progress was made in spite of an unexpectedly increasing caseload of both FOIA and Privacy Act requests. See Peppe Decl. ¶ 43. Moreover, the processing of FOIA requests at the State Department is uniquely complex and time-consuming because of the global dispersement of the agency and the sensitive nature of the information handled by the Department; FOIA requests often require searches of multiple offices located around the globe, interagency cooperation, and redaction of classified information. Id. ¶ 42. Despite this increasing caseload, over the course of two years, IPS's backlog reduction taskforce reduced the backlog by 85% – processing over 11,500 requests over the course of the project. See id. ¶ 11.

Since the end of fiscal year 2004, IPS has lost significant resources devoted to FOIA processing. See Peppe Decl. ¶ 47. Moreover, the volume of FOIA requests has continued to rise – by about 50% over the last two years. Id. ¶ 43. Additionally, IPS has received "an increase of complex, time-sensitive, and time-consuming document demands from the Congress, criminal prosecutors and other investigative bodies, and pusuant to court order." Id. ¶¶ 44-45. IPS is currently working on seventy-nine such requests. Id. For example, IPS has been deluged with requests from other government agencies regarding the United Nations' Oil-for-Food Program. See id. Finally, IPS has tripled its systematic review of historical records in order to meet the December

31, 2006 deadline for the declassification of records over 25-years-old. See id. ¶ 46.

As a result of these increased responsibilities and declining resources, the backlog has risen again somewhat, to about 3,400 pending requests. See Peppe Decl. ¶ 11. That number, however, is roughly half what it was at the end of 2001, despite the fact that the volume of requests made has increased dramatically since that time. This fifty percent reduction surely constitutes the good faith effort in reducing the backlog required by the caselaw. Appleton, 254 F. Supp. 2d at 8; Kuffel, 882 F. Supp. at 1127. To penalize the State Department for the recent re-emergence of the backlog would penalize the Department's dramatic success in 2004. Moreover, it would primarily penalize other FOIA requesters by forcing plaintiff's most voluminous requests to be processed out of order. Furthermore, the defendant engages in continuing efforts to improve and streamline the process. See Peppe Decl. ¶¶ 3, 11-13.

B.   THE STATE DEPARTMENT HAS EXERCISED DILIGENCE IN THE PROCESSING OF CPI'S REQUESTS

The State Department "is exercising due diligence in responding to the request," as required by 5 U.S.C. § 552(a)(6)(C)(i). To streamline the process, the State Department uses a multitrack system so as to help distinguish between simple and complex requests. See Peppe Decl. ¶ 21. This system ensures that requests that do not require much time do not have to sit in line behind those requests that involve many pages or involve other time-consuming matters. Each of plaintiff's requests has been considered routine/complex, and assigned to the ordinary track. See Peppe Decl. ¶¶ 49, 56, 59, 62, 67, 75, 80.

As described in the background section of this memorandum, IPS has worked diligently to process plaintiff's requests efficiently and in order of their receipt without prejudicing other requesters. When the requests came up for processing, thorough searches were initiated and records

promptly located. See Peppe Decl. ¶¶ 50-51, 63-64, 68, 72, 76-77, 81-82. Since the filing of this lawsuit, five of the seven requests have been closed, and nearly a thousand pages of documents reviewed, redacted and released in accordance with Department policy. See id. ¶¶ 57, 60, 64-65, 78, 82-83, 85.

The most voluminous remaining records to be produced are the Country Operating Plans.[3] These have been compiled for review by the appropriate personnel and comprise over 10,000 pages. Peppe Decl. ¶ 51. The Country Operating Plans describe in great detail the AIDS relief and prevention operations of many U.S. government entities and hundreds of partners in 15 different countries over three years. As planning documents, it is possible that they contain privileged and private information and they must be carefully reviewed. To fully review, redact and release these plans without prejudicing other requesters will take until June 30, 2006. See Peppe Decl. ¶ 85.[4]

C.     THE STATE DEPARTMENT IS ENTITLED TO A STAY OF PROCEEDINGS UNTIL JUNE 30, 2006

These efforts more than meet the standard for "extraordinary circumstances." See Open Am., 547 F.2d at 616. The State Department has demonstrated reasonable progress in reducing its backlog despite inadequate resources and a deluge of FOIA requests. This stay is necessary so as to maintain an orderly process of producing documents in a first-in, first-out manner and for defendant to be fully

---

[3] The only other outstanding request is the request for an index of partner contracts. This request was substantially modified by the plaintiff by letter dated February 10, 2006. See Peppe Decl. ¶ 70 & Attach. 17. Responsive records have been located and are under review, but because some of the information originated with other agencies, those agencies must be consulted before the documents can be released. See Peppe Decl. ¶ 72-73. Cf. 5 U.S.C. § 552(a)(6)(B)(iii) (the need for consultation with other agencies can justify an extension of the statutory time limit). Fully responsive records will be released within the next few weeks and this contracts request is not a basis for the requested stay until June 30, 2006.

[4] As discussed above, the June 30, 2006 estimate does not take into account the recent modified request for the COPRS system. The defendant is hopeful that the COPRS issue can be resolved with the plaintiff prior to June 30, 2006.

responsive to plaintiff's requests before moving for summary judgment. The defendant has already located and compiled all potentially responsive documents and seeks this stay only for the time-consuming, complex task of reviewing and redacting the thousands of pages potentially responsive to the request for Country Operating Plans. See Peppe Decl. ¶ 51, 85.

Although the agency's progress and diligence in the face of inadequate resources is sufficient reason to grant a stay, plaintiff also has failed to reasonably narrow the request or agree to a reasonable time-frame for full processing of this request for over 10,000 pages. See Peppe Decl. ¶ 84. The State Department has repeatedly and reasonably revised its processing estimates and made reasonable offers to the plaintiff, which has refused these efforts at setting a plausible time-frame for the agency to finish processing. See id. The statute provides that such a refusal by the plaintiff weighs heavily in favor of finding exceptional circumstances. See 5 U.S.C. § 552(a)(6)(C); Al-Fayed, slip. op. at 6 (Exhibit B, attached hereto).

Finally, the amount of time requested by the defendant to complete processing is modest in comparison to other cases where Open America stays have been sought. See, e.g., Piper v. Dep't of Justice, 339 F. Supp. 2d 13, (D.D.C. 2004) (discussing history of case, including two-year stay); Al-Fayed, slip. op. at 7, 11-12 (Exhibit B, attached hereto) (granting State Dep't and other agencies a stay of over six months from the date of the order); Edmond, 959 F. Supp. at 4 (granting 1-year stay to U.S. Attorney); Rabin v. U.S. Dep't of State, 980 F.Supp. 116, 123 (E.D.N.Y. 1997) (granting a stay of about five months from date of order); Ohaegbu, 936 F. Supp. at 8 (granting one-year stay to FBI).

### III. ALTERNATIVELY, THE COURT MAY GRANT AN EXTENSION OF TIME

Regardless of whether or not the State Department has satisfied the Open America standard, the Court nonetheless has the power to, and should, grant the defendant additional time to process

16

plaintiffs' requests. As Judge Leventhal noted in Open America, "there certainly is some room for a court in equity to stay its hand, and to forbear from enforcing a declared right in cases where the defendant is called upon to do the impossible." Open America, 547 F.2d at 620 (Leventhal, J., concurring). Perhaps recognizing this latitude, even courts which have held "that a great number of requests, insufficient funding, and inadequate staff do not constitute 'exceptional circumstances,'" have not "ordered immediate responses to the FOIA requests." Cohen v. FBI, 831 F. Supp. 850, 853 (S.D. Fla. 1993). See also Fisher v. Federal Bureau of Investigation, 94 F. Supp. 2d 213, 217-18 (D. Conn. 2000) ("While delay may effectively deny a request, courts often grant at least some time extension for equitable reasons 'when presented with evidence of an overburdened agency following necessary procedures.' . . . Defendants' affidavits detail the handling of the requests, the nature of such searches, and the exceptional problems defendants have with backlog due to time and budget constraints. Therefore, defendants sufficiently met their initial burden.") (internal citations omitted).

In the present case, this Court could choose to grant the defendant an extension of time in which to complete processing of plaintiff's remaining FOIA request before requiring a proposed briefing schedule. The agency is working diligently on producing these materials in due course, as shown by the fact that, since the plaintiff's original requests, the defendant has produced nearly a thousand pages, closing five of the seven requests. See Peppe Decl. ¶ 85. Because of the voluminous and sensitive nature of plaintiff's remaining requests, the State Department estimates that completion of processing will take until June 30, 2006. See id. As compared to many of the defendants seeking Open America stays in the cases described above, the State Department seeks a very short period of time in which to complete processing. Such an extension would result in no prejudice to plaintiff, who has never sought expedition in this matter or demonstrated any special need for the documents at issue.

## **CONCLUSION**

For the foregoing reasons, this Court should grant the defendant's Motion For a Stay of Proceedings until June 30, 2006 or, in the alternative, extend the deadline for scheduling dispositive motions.

Dated: March 14, 2006                                  Respectfully submitted,

                                                   PETER D. KEISLER
                                                   Assistant Attorney General

                                                   KENNETH L. WAINSTEIN
                                                   United States Attorney

                                                   ARTHUR R. GOLDBERG
                                                   Assistant Director
                                                   Federal Programs Branch

                                                   /s/Amy E. Powell
                                                   AMY E. POWELL
                                                   Attorney (NY Bar)
                                                   U.S. Department of Justice
                                                   Civil Division, Federal Programs Branch
                                                   20 Massachusetts Avenue, N.W.
                                                   Washington, D.C. 20530
                                                   Telephone: (202) 514-9836
                                                   Facsimile: (202) 616-8202
                                                   Email: amy.powell@usdoj.gov