UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| Center for Public Integrity | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. |
|  | ) 1:05-02313 |
| U.S. Department of State | ) |
| Defendant. | ) |

DECLARATION OF MARGARET G. PEPPE

I, Margaret G. Peppe, declare and state as follows:

    1.    I am the Deputy Director of the Department's
Office of Information Programs and Services (IPS) and the
Department's Records Officer.  In the absence of the
Director, as is presently the case, I am the Department
official immediately responsible for responding to requests
for records under the Freedom of Information Act (FOIA), 5
U.S.C. § 552; the Privacy Act, 5 U.S.C. § 552a; and other
applicable records access provisions.  I have been in the
employ of the Department of State since 1971 and have

served with the Department's information management and access programs for most of my tenure with the Department. I am authorized to classify and declassify national security information pursuant to Executive Order (E.O.) 12958, as amended, and Department of State regulations set forth in 22 CFR §§ 9.7 and 9.14. I make the following statements based upon my personal knowledge, which in turn is based on a personal review of the records in the case file established for the processing of the subject requests, and upon information furnished to me in the course of my official duties. I have read plaintiff's complaint filed in the above-captioned matter, and I am familiar with the efforts of Department personnel to process the subject requests.

    2.    The purpose of this declaration is four-fold: first, to describe the Department's initiatives to reorganize and improve its information-access program and reduce its backlog of FOIA requests; second, to describe the Department's system of processing FOIA requests; third, to describe the exceptional circumstances that have impacted the Department's timetable for processing FOIA requests; and fourth, to describe the Department's processing of the seven FOIA requests at issue in this litigation.

I.   THE DEPARTMENT'S INITIATIVES TO REORGANIZE AND RE-
     ENGINEER ITS INFORMATION ACCESS PROGRAM AND REDUCE ITS
     FOIA BACKLOG.

     3.   In order to respond more effectively to FOIA and
other information-access requests, the Department,
specifically IPS, has initiated significant efforts to
reorganize the infrastructure, to reinvent the culture, to
re-engineer the business processes, and to design and
implement cutting edge technologies of its information-
access programs.  All of these have been targeted at the
objective of reducing the backlog, but more importantly, at
the ultimate goals of furthering requester satisfaction,
enhancing the quality of responses, increasing
responsiveness, and improving timeliness.


          A.   THE STRUCTURE OF IPS

     4.   IPS oversees and administers virtually all
significant records-management and record-access functions
within the Department of State.  IPS responds to requests
for information and records from a wide variety of
customers, including (but not limited to) the public
(through FOIA and other information-access requests), the
courts, Congress, other federal agencies, private
litigants, foreign governments, and Department of State
personnel.  IPS is also responsible for ensuring that the

4

Department is in compliance with a range of information-related laws, including (but not limited to) the FOIA, the Privacy Act, and Executive Order 12958 (as amended). IPS is also Records Manager for the Department of State and is responsible for the maintenance of official Department records in accordance with the Federal Records Act and other records management laws. IPS also manages the Department's Ralph J. Bunche Library in Washington, D.C.

5. The IPS structure includes the following divisions and staffs: the Requester Liaison Division (RL), which interacts with the public through its Requester Communications (RL/RC) and Advocacy and Oversight Branches (RL/AO); the Programs and Policies Division (PP), with enterprise-wide direction of information lifecycle management and information access programs; the Library (LIBR); the Archiving and Access Systems Division (AAS), with corporate electronic archive and business automation responsibility; the Resource Management Staff (RM); the Statutory Compliance and Research Division (CR), which processes requests for department records, including search, review and release of records; and the Systematic Review Program staff (SRP), responsible for meeting the 25-year declassification requirements of E.O. 12958, as amended. To meet the requirements of the Federal Records

Act and the E-Government Act, IPS has recently realigned its workforce to better meet its records access and records management responsibilities.

6.    These divisions and staffs are comprised of program analysts who are responsible for records management, case processing, research, and policy development and implementation; foreign affairs officers, including retired senior Foreign Service Officers, who serve as expert consultants and reviewers; technical information specialists who retrieve, index, prepare, and scan archival documents; and computer specialists who design, develop, maintain, and operate the corporate archive, FREEDOMS (discussed below), and Intranet and Internet websites.

B.    BACKLOG REDUCTION INITIATIVES

7.    In 2002, facing a FOIA backlog of over 6,000 cases, the Department initiated actions to increase the resources allocated to the FOIA program, including three workforce recruitment efforts to supplement existing staffing resources.    First, IPS recruited nearly seventy additional retired Senior Foreign Service Officers to add to its document reviewer corps.    Such recruiting is an

6

ongoing effort and all are employed on a temporary, part-time basis.

8.    Second, beginning in 2002, IPS staffed some of the more time-consuming and labor-intensive support activities inherent in responding to FOIA and other document production demands with students recruited from universities in the metropolitan area under the "STARS" (Success-Today and Tomorrow-Through Training and Recruiting Students) program.    Twenty-three students are currently working in IPS on a part-time basis, with one quarter working in FOIA or FOIA support activities.    In addition, IPS has two Presidential Management Fellows.    This, too, is an ongoing effort that will continue to make a major contribution to the FOIA program.

9.    Third, in 2002, IPS was granted twenty-three new full-time positions and $4 million to sustain the operation of a FOIA backlog reduction task force for a two-year period.    The task force, known as Due Diligence, consisted of full-time employees diverted from our permanent infrastructure to provide leadership, training, and supervision, and reviewers and contractors (analysts, technical and support personnel) from a company that specializes in FOIA backlog reduction, bringing with it

experienced information access professionals to aid in the
backlog reduction efforts.

10.   The Due Diligence FOIA backlog reduction task
force conducted searches in the Department's Central
Foreign Policy File, followed up on search actions pending
in bureaus and offices throughout the Department, reviewed
materials retrieved for declassification, out-processed
reviewed material, and sent releasable documents to
requesters.  In addition to completing cases, the task
force took a "lessons learned" approach to streamline the
process and improve the FOIA program overall.  Specialized
reports were developed to analyze the FOIA caseload and
monitor the progress of FOIA cases to completion.  The
procedure for analyzing and narrowing incoming FOIA
requests now includes using previously released material to
complete and close requests.  Whenever possible, certain
FOIA requests are now referred to the appropriate offices
in the Department for direct response to the requester.

11.   IPS surpassed its goal of closing 80% of all
backlog cases by the end of fiscal year 2004 (September 30,
2004).  Over the two-year project cycle, more than 11,500
requests were completed.  By the end of fiscal year 2004,
IPS had reduced the Department's overall FOIA backlog from
6,214 to fewer than 2,000 cases.  Due to a series of

unforeseen circumstances described in Section III of this declaration, the Department's backlog has risen to over 3,400 requests as of February 24, 2006. However, IPS continues to target the following initiatives: (1) reduce the remaining FOIA backlog; (2) minimize the possibility of future backlogs; (3) identify areas in which procedural improvements can be made; and (4) implement improvements to streamline the FOIA process.

### C.    TECHNOLOGY INITIATIVES

12.    The Department has long viewed technology (particularly information management technology) as critical to its diplomatic mission. Continued technological innovation is essential in order to manage ever-increasing amounts of information, to respond to ever-increasing demands for access to information, and to declassify national security information in accordance with the law — all mandates that impose greater demands on already limited resources.

13.    IPS continues to upgrade the technology used in its information management and access programs. The State Archiving System (SAS) was created in the late 1990s and now serves as the official corporate database of the Department of State. Because it houses the Department's

automated Central Foreign Policy File (discussed below),
the SAS captures all significant substantive reporting
between the Department and its overseas posts.  The SAS
also includes a Written Correspondence module that can
capture, through scanning, significant pieces of
correspondence between the Department and other Federal
agencies, the Congress, or diplomatic embassies and foreign
governments in addition to significant intra-departmental
memoranda.  The SAS, which is full-text searchable, is the
only automated corporate Federal database of its kind -- a
comprehensive source of information that documents and
records the conduct of the foreign policy of the United
States.  The SAS currently houses over 28 million records
from 1973 to the present.

14.  The SAS, which is accessible primarily to IPS
researchers, serves as the primary retrieval source for
most of the research done by the Department in response to
the entire range of document production and information
access requirements.

15.  To support the requirements of the E-FOIA, IPS
designed and developed the Freedom of Information Document
Management System (FREEDOMS) in 1997.  FREEDOMS is
available to the entire IPS workforce (250 employees).
FREEDOMS includes case-by-case comments from IPS analysts

10

and reviewers, dates of correspondence to information access requesters, and images of responsive documents (redacted and unredacted).  Through FREEDOMS, every IPS employee has desktop access to a database of over 139,000 prior requests and their associated inventory of nearly 3 million documents.  FREEDOMS is the automated solution designed to meet the unique business requirements associated with statutorily-mandated information declassification and disclosure, including electronic workflow to facilitate case management and processing, research and retrieval, electronic document review and redaction, document life-cycle management and archiving, and release to the public.

D.    WEB-BASED INITIATIVES

16.    IPS has established a website on the Internet (located at http://foia.state.gov/SearchColls/Search.asp), which provides the public with automatic electronic access to a continuously growing collection of over 60,000 documents.  Many of the documents are grouped by topic of specific historical interest (for example, human rights abuses in Guatemala from 1984 to 1995; the disappearance and investigation of Amelia Earhart; the disappearance in Hungary of Swedish diplomat Raoul Wallenberg during World

War II; and so on). The online collection also includes

nearly 1,500 international agreements entered into by the

United States since March 1998, and a library of over

15,000 documents previously released under the FOIA that

have been determined to be of general public interest. In

addition to the documents themselves, the website features

a search engine that enables users to conduct full-text

search and retrieval of the documents in the collection.

In the fiscal year ending September 30, 2005, this website

of publicly available documents averaged over 20 million

visits per month.

17. One of IPS's basic assumptions is that educating

users regarding records and information access programs

will result in better-served customers and a more efficient

use of IPS's scarce resources. Accordingly, the

Department's general FOIA website (located at

http://www.foia.state.gov) includes many tools to help the

public understand the nature of the Department's records

and how to access that information from those records. The

site contains FAQs (frequently asked questions) that

explain what a record is, how records are organized, what

classified records are, the differences between permanent

and temporary records, and what happens to records at the

end of their lifecycle. In addition, the site has short

descriptions of each of the Department's information access
programs, "how to" pages, and the full text of relevant
laws and executive orders and regulations.

18.   The Department is one of the few Federal agencies
that permits the filing of FOIA requests on-line.   In the
summer of 2004, the Department launched its "FOIA Request
Aid" on its FOIA website (at
http://www.foia.state.gov/foiareq/foialetter.asp).   Members
of the public can use the FOIA Request Aid to submit FOIA
requests directly to the Department through the
Department's FOIA website.


    E.   OTHER INITIATIVES

19.   IPS has also launched an initiative to achieve
certification under the ISO 9000 quality management
standard.   This internationally recognized standard
requires that an organization create and maintain complete
and accurate documentation of its work procedures.   The
documentation is then audited by an external auditing
entity for certification.   The Requester Communications
Branch, which is the initial point of receipt for incoming
FOIA and Privacy Act requests, is the first IPS component
to participate in this initiative.   Accordingly, procedures
surrounding the initial processing of FOIA and Privacy Act

requests have been reviewed and documented to ensure that such determinations are made in a consistent manner and in conformance with the Department's regulations. Participation in the ISO 9000 initiative has already improved the Department's communications at the initial processing stage in FOIA and Privacy Act cases. IPS is planning to add other IPS components into the ISO 9000 initiative.

II.  ADMINISTRATIVE PROCESSING OF FOIA REQUESTS.

20.  In general, the Department processes FOIA requests in four stages:  (1) receipt and acknowledgment of the request; (2) search and retrieval of potentially responsive documents; (3) review of documents; and (4) response and release to the requester.  Each of these stages is described in more detail below.  Because many requests necessitate multiple searches, different segments of the same case may be at different stages of the process simultaneously.

A.  PROCESSING ORDERING

21.  The Department generally processes requests at each stage on a "first in, first out" basis.  However, consistent with the E-FOIA, the Department has established

two tracks for processing requests from the public: simple/fast and routine/complex. (See 22 C.F.R. 171.12(e)). A request is assigned to a particular track based upon the amount of work and/or time needed to process the request.

22. Also consistent with the E-FOIA, the Department makes an exception to multi-track processing described above when a request warrants expeditious handling, i.e., if a requester has demonstrated a "compelling need" for the information. A "compelling need" under the Department's regulations is deemed to exist when a requester can demonstrate one of the following:

1.    "Failure to obtain [the] requested information on an expedited basis could reasonably be expected to: Pose an imminent threat to the life or physical safety of an individual; impair substantial due process rights; or harm substantial humanitarian interests."

2.    "The information is urgently needed by an individual primarily engaged in disseminating information in order to inform the public concerning actual or alleged Federal Government activity. News media requesters would normally qualify; however, other persons must demonstrate that their primary activity involves publishing or otherwise disseminating information to the public, not just a particular segment or group."

22 C.F.R. § 171.12(b).

23. Granting a request for expedition necessarily works to the disadvantage of other requesters whose requests were filed earlier, and whose requests would normally have received priority under the "first in, first out" principle. Accordingly, the Department sparingly grants requests for expeditious handling. In the fiscal year ending September 30, 2005, only seven requests were processed under expedited handling procedures.

B.    RECEIPT AND ACKNOWLEDGEMENT

24. Requests for information under the FOIA may be made by mail or by facsimile to the Information and Privacy Coordinator (Director of IPS), in person at IPS's Washington, D.C. offices, or via the Internet at http://foia.state.gov/foiareq/foialetter.asp.

25. Once received within IPS, the Requester Communications Branch (RL/RC) performs the initial administrative processing. RL/RC mails an acknowledgment letter to the requester shortly after receiving the request. This letter: (1) acknowledges receipt of the request; and (2) informs the requester of the case number assigned to the request for identification and control purposes. For those requests that need perfecting, a second letter from RL/RC addresses administrative details

regarding the request and its processing (including

informing the requester of any additional information that

will be required before a search can be initiated). RL/RC

is also responsible for assigning certain cases to the

simple/fast or routine/complex tracks, and deciding

requests for expedited processing and (with some

exceptions) fee waivers.


C.    SEARCH AND RECORDS SYSTEMS

    26.  The Department initiates searches for requests

that reasonably describe the nature of the records sought

and that are made in compliance with the Department's

published regulations.  Such requests are assigned to a

branch within the Statutory Compliance and Research

Division (CR) according to the subject of the request.

    27.  The Statutory Compliance and Research Division

(CR) evaluates the request subject and determines which

offices, overseas posts, or other records systems within

the Department may reasonably be expected to contain the

information requested.  This determination is based on the

description of records set forth in the request letter, and

is tempered by any specified limitation on applicable fees

and/or any specified limitation on records systems to be

searched.  It also requires a familiarity with records

system holdings, applicable records disposition schedules,
and the substantive and functional mandates of the numerous
offices within the Department.

          i.   Central Foreign Policy File/State Archiving
             System (SAS)

   28.  The records of the Department are maintained in
centralized and decentralized records systems.  The Central
Foreign Policy File (Central File) is the Department's
primary centralized records system.  The Central File,
which is maintained electronically in the State Archiving
System (SAS), contains documents of a substantive nature
that establish, discuss, or define foreign policy, set
precedents, or require action or use by more than one
office.  The Central File includes official record copies
of incoming and outgoing Departmental communications,
including telegrams between the Department and foreign
service posts; diplomatic notes; correspondence to and from
the White House, members of Congress and other Federal
agencies; position papers and reports; memoranda of
conversation; and inter-office memoranda.  (In recent years
and with the increasing use of email messages to conduct
routine business, less of the written (i.e., non-telegram)
correspondence is captured for scanning into SAS.)  The

Central File, the Department's business corporate archives,
contains documents dating from 1973 to the present.
Because the Central File is the Department's most
comprehensive authoritative compilation of documents, it is
by far the system of records that is searched most
frequently for documents.

29.    Analysts within the various IPS branches conduct
searches of the Central File through automated searches in
the SAS.    When searching the SAS, the IPS analyst develops
a search strategy using the subject matter of the request,
the pertinent geographic areas, and any other relevant
search terms, as well as the time frame specified by the
requester.    As described above, the SAS is full-text
retrievable and has the capability to retrieve documents
displaying case specific search terms in any of the search
fields.    After finding documents within SAS that contain
the search terms entered by the analyst, the analyst and
the reviewer then determine which documents may be relevant
to the specific request, a process requiring analysis of
each document retrieved.

30.    An IPS analyst's speed in responding to a Central
File search tasking for a FOIA request depends to a large
extent on the number of requests already pending, as well
as on the number of existing searches required to be

performed overall, including searches under the Privacy
Act, E.O. 12958, as amended, etc.  Factors such as the
nature, scope, and complexity of the request are also
relevant.

### ii.  Other records systems

31.  Executive Secretariat files:  The Department's
Executive Secretariat maintains centralized records of the
Secretary of State and of certain other high-ranking
Department officials.  This records system is a unique
collection of material used to support the work of the
highest levels of the Department.  Because of the special
sensitivity of these records, their use is strictly
controlled, even within the Department.

32.  Office/Post files:  Each office within the
Department and each Foreign Service post maintains active
working files concerning foreign policy and other
functional matters related to the daily operations of that
office or post.  (The records maintained by the Office of
the Global AIDS Coordinator at issue in this case fall into
this category.)  These files consist generally of working
copies of documents, information copies of documents
maintained in the Central File, as well as other
specialized documents prepared by or furnished to the

office or Foreign Service post in connection with the performance of its official duties. When these files are no longer needed by the office or post, they are retired to an off-site storage facility. The majority of these inactive files are retired to the Department's Records Service Center, which IPS manages. While they remain under the Department's control, IPS is responsible for conducting searches of these inactive files in response to FOIA requests, and others. For obvious reasons, searches of retired office and post files take far longer than searches of the SAS. IPS analysts review manifests of retired records to determine whether any records may exist with relevant information, recall potentially relevant records from storage, and search those records manually.

33. Decentralized records: The Department also has decentralized records systems maintained both in the Department and at Foreign Service posts. Rather than foreign policy or operational issues, decentralized records systems include (among other things) personnel, security, medical, and consular records. These files, when retired, remain under the control of the Department's decentralized bureaus. Employees in those bureaus conduct searches of these files in response to FOIA requests.

34.    Searches of the Executive Secretariat's files, office and post active working files, and decentralized files generally are performed by individuals employed within these offices and posts who are familiar with the subject matter of the request and the relevant records of the office or post.    Again, the speed of these offices in responding to a given search tasking for a FOIA request depends to a large extent on the number of requests already pending, as well as the availability of personnel, the nature, scope and complexity of the request, and other priorities arising from the substantive work of that office.

D.    REVIEW

35.    Copies of potentially responsive documents are retrieved as described above, transmitted to IPS, and recorded (typically via scanning into the FREEDOMS database).  The responsive documents are then transmitted with necessary guidance to the appropriate review authority.

36.    Review of decentralized records is conducted by personnel from the offices that maintain the decentralized records, due to the unique nature of decentralized records and the familiarity of the personnel in those offices with

22

their records' sensitivity. Reviewers (primarily retired Foreign Service Officers who are hired on a part-time basis) from the various branches within the Statutory Compliance and Research Division (CR) review all other documents.

37.   The length of time required for a line-by-line review of the documents is a function of numerous and complex factors, including: the number of previously pending requests already assigned for line-by-line review; the number and availability of reviewers with an appropriate level of experience and expertise; the number of documents and pages to be reviewed; the need to coordinate with other bureaus, Federal agencies, or foreign governments; and the nature and sensitivity of the documents, particularly in view of the unique national security role played by the Department with respect to the foreign affairs and national security activities of the United States.   Such a process, particularly where sensitive national security foreign policy or personal material is involved, is necessarily time-consuming.

### E.   ADMINISTRATIVE OUT-PROCESSING

38.   The Statutory Compliance and Research Division (CR) is responsible for the administrative out-processing

of FOIA requests.  CR performs a quality control check of
the document review, redacts information not authorized to
be released, makes any needed photocopies, assesses
applicable fees, compiles relevant data for entry into the
FREEDOMS system, and corresponds with the requester.  Once
administrative out-processing has been completed on any
particular segment of a FOIA case, the released materials
are sent to the requester.

39.  In many instances, documents retrieved by the
Department may have been originated by, or contain
information provided by, another Federal agency.  In such
cases, a referral to or concurrence with this agency is
necessary to ensure a proper and consistent disclosure
decision.  Similarly, certain information classified under
E.O. 12958 (as amended) requires coordination with foreign
governments or international organizations prior to
release.

40.  In summary, the length of time for actual
processing of a particular request in the four stages of
processing (receipt, search, review, and administrative
out-processing) varies with the nature and the complexity
of the request, the number and nature of the records
systems that must be searched, the need for coordination of
review within the Department or with other agencies or

foreign governments, the volume of responsive documents
(while some requests involve hundreds, many involve
thousands of documents), the number of previously pending
requests at any stage of the process, and the availability
of an adequate number of employees with an appropriate
level of expertise.


III. CURRENT FOIA PROGRAM IMPLEMENTATION

41.   The following is a discussion of the exceptional
circumstances that have impacted the Department's timetable
for processing FOIA requests.

42.   The Department is the recipient of a large number
of FOIA requests of a breadth and complexity perhaps
unparalleled among Government agencies.  Because of the
central role played by the Department of State in the
conduct of U.S. foreign affairs and the growing public
interest in accessing records related to foreign affairs,
the Department receives a high number of information
requests and is often the agency of first resort for
lawyers, business persons, reporters, historians,
academics, public-interest groups, and interested citizens
seeking information about an enormous range of issues
relating to U.S. foreign policy matters.  Case processing
in the Department is generally complex for several reasons.

The majority of information access requests made to the
Department involve taskings and searches of more than one
domestic office, overseas post, or record collection.
Similarly, given the nature of the Department's foreign
policy/foreign affairs mission, a large number of
information access requests made to the Department seek
information derived from multiple sources and require
interagency coordination as contemplated by the FOIA,
and/or foreign government or international organization
coordination for certain information classified under E.O.
12958 (as amended).

43.    The number of direct FOIA and Privacy Act
requests received by the Department has increased
significantly and unexpectedly since 2003.  During fiscal
year 2004, the Department experienced an increase in the
number of new direct FOIA/Privacy Act requests received of
about 19 percent over fiscal year 2003.  During fiscal year
2005, that number jumped by another 26 percent.  Thus, in
this two-year period, the number of new direct FOIA/Privacy
Act requests received by the Department has increased by
about 50 percent.

44.    Additionally, the Department has received an
increase of complex, time-sensitive, and time-consuming
document demands from the Congress, criminal prosecutors

and other investigative bodies, and pursuant to court
order.   These requests divert a significant amount of IPS's
resources from the processing of FOIA requests.   The
Department is currently working on seventy-nine such
requests from various entities, including the Congress, the
Government Accountability Office, the White House, the
Department of Justice and other Federal agencies engaged in
criminal and civil lawsuits involving the interests of the
Federal Government, and subpoenas from state and local
governments.

        45.   For example, within the last year, the Department
has processed, and continues to process, tens of thousands
of documents in response to multiple requests from Congress
and other federal agencies on the topic of the United
Nations' former Oil-for-Food program.   Responding to Oil-
for-Food-related requests continues to be a major
undertaking for IPS and the Department as a whole,
involving multiple searches of dozens of offices, posts,
and records systems, and the retrieval, review, and
processing of over 60,000 pages of responsive records so
far.   As another example from within the last year, in
response to a broad congressional request for records
related to harm reduction, drug legalization, and the Soros
network of foundations, the Department has processed over

80,000 pages of material, and is continuing to process
additional materials.

46.    The Department must also devote substantial
resources to its systematic review efforts.  Unlike most
other Federal agencies, the Department has had a long-
standing systematic review program to declassify historical
records and place them in the public domain at the National
Archives.  Still, Executive Order 12958, as amended, on
Classified National Security Information (which, beginning
December 31, 2006, automatically declassifies all records
over 25 years old unless an agency can show that the record
should remain classified) requires the Department to triple
its former systematic review rate annually in order to meet
the initial December 31, 2006 deadline.  This review effort
under the Executive Order will be ongoing with all records
as they become twenty-five years old.  The Department
relies on the same corps of expert reviewers for both the
FOIA and systematic review programs.  Additionally, the
Department is in the process of reviewing for transfer to
the National Archives the corporate electronic records of
the Central Foreign Policy File in the State Archiving
System (SAS), and associated microfilm documents.  To
accomplish the review, IPS has developed an application,
which is part of SAS and allows for online review of these

records.  The Department completed its review and transfer

to the National Archives of over 1.2 million electronic

records (3.7 million pages) of the Central Foreign Policy

File for the 1973-75 period.

47.  Despite these increased demands on its

information-access resources, the IPS budget for

information-access programs decreased from about $10.3

million in fiscal year 2004 to about $8.6 million in fiscal

year 2005 and to about $8.3 million in fiscal year 2006.


IV.  ADMINISTRATIVE PROCESSING OF PLAINTIFF'S REQUESTS

A.  REQUEST NO. 200504053

48.  By letter dated September 16, 2005 (Attachment

1), to Margaret P. Grafeld, Information and Privacy

Coordinator, in the Office of Information Programs and

Services ("IPS"), plaintiff requested copies of:

1) Country Operating Plans for all 15 countries receiving
   funding from the President's Emergency Plan for Aids
   Relief (Pepfar), including "activities to be
   implemented during the fiscal year, along with the
   associated activity descriptions, funding levels,
   indicator targets and implementing partners," as
   described under the Emergency Plan Country Operational
   Plan and Reporting System (COPRS), page 121, in
   Pepfar's First Annual Report to Congress.

2) Data about partners should include the comprehensive
   list of community-based organizations (CBO), faith-
   based organizations (FBO) and non-governmental
   organizations (NGO) currently funded through Pepfar in

*Center for Public Integrity v. U.S. Department of State*
*Peppe Declaration*

each of the 15 countries covered by the President's
plan.

Plaintiff asked to be placed in the category of
"representative of the news media" for fee purposes,
requested a waiver of all fees, and agreed to pay up to
$25.00 if the waiver was not granted.

49.  By letter dated September 26, 2005 (Attachment
2), IPS acknowledged plaintiff's request and assigned to
the request case control no. 200504053.  Plaintiff was
informed that IPS would begin the processing of its request
based upon the information it provided and that the date
for retrieving records would either be the date that was
provided to the Department by specifying a particular time
frame or the date the search was initiated.  Plaintiff was
advised that it had been placed in the "news media"
category, and that its request for a fee waiver had been
denied.  Plaintiff was informed of its right to appeal the
denial of a fee waiver.  Plaintiff's request was assigned
to the routine/complex track.

50.  In response to plaintiff's request, on or about
December 29, 2005, IPS initiated a search of the records of
the Office of the U.S. Global AIDS Coordinator (S/GAC) and
several other Department offices.  However, on January 18,

2006, S/GAC reported that it would have a complete set of
the materials responsive to this request, and all searches,
except for the search of S/GAC records, were canceled.

51.   On or about February 6, 2006, S/GAC completed its
search and transmitted over 10,000 pages of potentially
responsive records to IPS.  These records are currently
under review.

52.   By letter dated February 7, 2006 (Attachment 3),
IPS informed plaintiff that although its request was being
processed, it should be aware that significant amounts of
information responsive to its request were already publicly
available on S/GAC's website at http://www.state.gov/s/gac.
IPS further advised that, in particular, this website
included summaries of the Country Operating Plans and lists
of the partner organizations for each of the 15 PEPFAR
focus countries.  Plaintiff was advised that the search for
documents relevant to its request was continuing and it
would be notified when the search is completed.

53.   By email dated February 17, 2006 (Attachment 4),
plaintiff stated that it "would like to clarify the terms
of the request."  In the email, plaintiff requested "the
production of all responsive records from the Country
Operations Plan and Reporting System (COPRS)."  Plaintiff's

email also stated that "[p]roduction of the COPRS database"
would satisfy plaintiff's request that it receive documents
in electronic form.

54.  The Department, having already retrieved and
begun processing responsive records, is considering what if
any additional material will be produced in response to
plaintiff's February 17, 2006 letter.


B.  REQUEST NO. 200504758

55.  By letter dated October 18, 2005 to IPS
(Attachment 5), plaintiff requested "a copy of the
Department of State Central Resource Management System
(CRMS) for all available years."  Plaintiff asked to be
placed in the category of "representative of the news
media" for fee purposes, requested a waiver of all fees,
and agreed to pay up to $25.00 if the waiver was not
granted.

56.  By letter dated December 23, 2005 (Attachment 6),
IPS acknowledged plaintiff's request and assigned it case
control no. 200504758.  Plaintiff was advised that IPS was
in the process of reviewing its request and would contact
its again with additional information about the records it
was seeking.

57.  By letter dated January 17, 2006 (Attachment 7),
IPS advised plaintiff that the CRMS contained departmental
budget account and allocation information from which
detailed budget information was pulled and submitted to
Congress each year in the form of two publications:  The
Budget in Brief and Congressional Budget Justification.
Further, IPS stated that the publications presented prior,
current, and budget year funding and resource requirements
for Congress to consider during the annual State Department
appropriations process; and that past five years of The
Budget in Brief were available on the Department's Internet
website.  IPS provided the website address and explained
how to find the publications.  IPS informed plaintiff that
this concluded the Department's processing of its request.
The case was closed on January 17, 2006.


    C.   REQUEST NO. 200504760

58.  By letter dated October 18, 2005 to IPS
(Attachment 8), plaintiff requested a "copy of the
Department of State International Affairs Database (IAD)
for all available years."  Plaintiff asked to be placed in
the category of "representative of the news media" for fee

purposes, requested a waiver of all fees, and agreed to pay up to $25.00 if the waiver was not granted.

59.  By letter dated December 23, 2005 (Attachment 9), IPS acknowledged plaintiff's request and assigned it case control no. 200504760.  The plaintiff was advised that IPS was in the process of reviewing its request and would contact its again with additional information about the records it was seeking.

60.  By letter dated January 4, 2006 (Attachment 10), IPS advised plaintiff that the IAD contained foreign operations and mission budget account and allocation information from which detailed information was pulled and submitted to Congress each year as part of Congressional Budget Justifications for Foreign Operations.  IPS further advised plaintiff that the past five fiscal years of such budget requests were available on the Department's Internet website.  IPS provided the website address and explained how to find these items.  IPS informed plaintiff that this concluded the Department's processing of its request.  The case was closed on January 4, 2006.

D.    REQUEST NO. 200504788

61.    By letter dated October 18, 2005 to IPS
(Attachment 11), plaintiff requested copies of "all
appointment logs, appointment calendars, calendars of
meetings, daily agendas and other similar records for
Ambassador Randall L. Tobias, U.S. Global AIDS Coordinator,
between October 6, 2003, and the date on which you process
this request." Plaintiff asked to be placed in the
category of "representative of the news media" for fee
purposes, requested a waiver of all fees, and agreed to pay
up to $25.00 if the waiver was not granted.

62.    By letter dated December 23, 2005 (Attachment
12), IPS acknowledged plaintiff's request and assigned it
case control no. 200504788. Plaintiff was informed that
IPS would begin processing its request based upon the
information it provided, and that the date for retrieving
records was either the date specified in its letter or the
date the search is initiated. Plaintiff was advised that
it had been placed in the "news media" category, and its
request for a fee waiver had been denied. Plaintiff was
informed of its right to appeal the denial of a fee waiver.

Plaintiff's request was assigned to the routine/complex track.

63.   In response to plaintiff's request, on or about January 3, 2006, IPS initiated a search of the records of the Office of U.S. Global AIDS Coordinator (S/GAC).

64.   On or about February 6, 2006, S/GAC completed its search and transmitted several hundred pages of potentially responsive records to IPS.

65.   On March 13, 2006 (Attachment 13), IPS completed its review of these materials and sent the releasable portions of these materials to plaintiff.  This case was closed as of March 13, 2006.

E.    REQUEST NO. 200504795

66.   By letter dated October 18, 2005 to IPS (Attachment 14), plaintiff requested copies of "all contracts made in relationship to the President's Emergency Plan for Aids Relief (Pepfar) since the creation of the plan through the date on which you process this request." Plaintiff asked to be placed in the category of "representative of the news media" for fee purposes,

requested a waiver of all fees, and agreed to pay up to
$25.00 if the waiver was not granted.

67.   By letter dated December 23, 2005 (Attachment
15), IPS acknowledged plaintiff's request and assigned it
case control no. 200504795.  Plaintiff was informed that
IPS would begin processing its request based upon the
information it provided, and that the date for retrieving
records was either the date specified in its letter or the
date the search is initiated.  Plaintiff was advised that
it had been placed in the "news media" category, and its
request for a fee waiver had been denied.  Plaintiff was
informed of its right to appeal the denial of a fee waiver.
Plaintiff's request was assigned to the routine/complex
track.

68.   In response to plaintiff's request, on or about
January 12, 2006, IPS initiated a search of the records of
the Office of the U.S. Global AIDS Coordinator (S/GAC).  In
response, S/GAC advised that additional clarification from
plaintiff was necessary in order to identify responsive
records.

69.   By letter dated February 3, 2006 (Attachment 16),
IPS advised plaintiff that the Office of Global AIDS
Coordinator enters into contracts of an administrative

nature related to its Washington, D.C. employees and office operations, but does not conclude or administer contracts of a programmatic nature.  IPS requested that plaintiff clarify what type of contracts it was seeking pursuant to this request.

70.  By letter dated February 10, 2006 (Attachment 17), plaintiff modified the request to seek "any list or index or register or document containing same of all contracts, grants and/or agreement that have been made in relation to the President's Emergency Plan on AIDS Relief (Pepfar) since the creation of the plan in 2003 to the date on which you process this request."

71.  By letter dated February 17, 2006 (Attachment 18), IPS acknowledged receipt of plaintiff's revised request and informed plaintiff that its revised request was forwarded to the Office of the Global AIDS Coordinator for further action.  Plaintiff was also advised that when the search for responsive records is completed, it would be informed of the results.

72.  On or about February 23, 2006, S/GAC completed its search and transmitted potentially responsive records to IPS.

73.   IPS's review of this material is ongoing.
Because some of this material originated with the U.S
Department of Health and Human Services and the U.S. Agency
for International Development, IPS must coordinate its
response with these agencies.   IPS anticipates completing
this request within the next few weeks.


F.   REQUEST NO. 200505170

74.   By letter dated October 19, 2005 to IPS
(Attachment 19), plaintiff requested copies of "all records
or telephone logs reflecting incoming or outgoing calls by
Ambassador Randall L. Tobias, U.S. Global AIDS Coordinator,
and any telephone message clips and notes related to or
indicating invitations or attendance at telephonic
conference calls that were created by or on behalf of
Ambassador Tobias between October 6, 2003, and the date on
which you process this request."   Plaintiff asked to be
placed in the category of "representative of the news
media" for fee purposes, requested a waiver of all fees,
and agreed to pay up to $25.00 if the waiver was not
granted.

75.   By letter dated December 23, 2005 (Attachment
20), IPS acknowledged plaintiff's request and assigned it

case control no. 200505170.  Plaintiff was informed that
IPS would begin processing its request based upon the
information it provided, and that the date for retrieving
records was either the date specified in its letter or the
date the search is initiated.  Plaintiff was advised that
it had been placed in the "news media" category, and its
request for a fee waiver had been denied.  Plaintiff was
informed of its right to appeal the denial of a fee waiver.
Plaintiff's request was assigned to the routine/complex
track.

76.  In response to plaintiff's request, IPS initiated
a search of the records of the Office of U.S. Global AIDS
Coordinator (S/GAC) on or about January 3, 2006.

77.  On or about February 6, 2006, S/GAC completed its
search and transmitted potentially responsive records to
IPS.  S/GAC reported to IPS that it does not keep
"telephone logs reflecting incoming or outgoing calls by
Ambassador Tobias or "telephonic message clips," other than
records of phone calls or conference calls included in
documents that would be retrieved in response to request
no. 200504788.

78.  On March 13, 2006 (See Attachment 13), IPS
completed its review of these materials and sent the

releasable portions of these materials to plaintiff.  This case was closed as of March 13, 2006.


G.    REQUEST NO. 200600082

79.  By letter dated October 18, 2005 to IPS (Attachment 21), plaintiff requested copies of "any and all log(s) of correspondences (email and mail) sent and received by Ambassador Randall L. Tobias, U.S. Global AIDS Coordinator, between October 6, 2003, and the date on which you process this request."  Plaintiff asked that if the records were maintained in electronic format it wanted to receive electronic rather than paper copies.  Plaintiff also asked to be placed in the category of "representative of the news media" for fee purposes, requested a waiver of all fees, and agreed to pay up to $25.00 if the waiver was not granted.

80.  By letter dated January 11, 2006 (Attachment 22), IPS acknowledged plaintiff's request and assigned it case control no. 200600082.  (Initially, this request was going to be processed in tandem with plaintiff's request for Ambassador Tobias's appointment logs and calendars (No. 200504788).  IPS later decided to process this request separately from case 200504788, which is why this letter

was dated a few weeks after the acknowledgement letter in case 200504788.)  Plaintiff was informed that IPS would begin processing its request based upon the information it provided, and that the date for retrieving records was either the date specified in its letter or the date the search is initiated.  Plaintiff was advised that it had been placed in the "news media" category, and its request for a fee waiver had been denied.  Plaintiff was informed of its right to appeal the denial of a fee waiver.  Plaintiff's request was assigned to the routine/complex track.

81.  In response to plaintiff's request, on or about January 17, 2006, IPS initiated a search of the records of the Office of U.S. Global AIDS Coordinator (S/GAC).

82.  On or about February 6, 2006, S/GAC completed its search and transmitted approximately 100 pages of potentially responsive records to IPS.

83.  On March 13, 2006 (Attachment 23), IPS completed its review of these materials and sent the releasable portions of these materials to plaintiff.  This case was closed as of March 13, 2006.

84.  IPS initially estimated that the date for completing the largest of these requests from plaintiff

(number 200504053) would be October 31, 2006, and communicated that estimate to plaintiff through counsel. Once IPS received all responsive documents from S/GAC, IPS was able to revise its estimated completion date. Through counsel, IPS offered to complete this request by June 30, 2006. IPS has also offered to produce responsive records to plaintiff to all of the requests on a rolling basis.

85. In summary, the Department has completed processing of five of plaintiff's seven requests and has produced nearly a thousand pages of responsive records. The only remaining open requests are numbers 200504053 and 200502795. For these requests, the Department has initiated searches of those records systems that are likely to contain records requested by plaintiff and has located potentially responsive documents. These documents must be reviewed for responsiveness to the requests and for disclosure to the plaintiff. Any further responsive, disclosable documents will be produced to the plaintiff on a rolling basis. The Department will continue to exercise due diligence in processing plaintiff's requests, consistent with its obligations to other requesters. Regarding request number 200504053, IPS has retrieved over 10,000 pages of potentially responsive documents, and although it will attempt to complete processing sooner, IPS

anticipates completing processing of these materials no later than June 30, 2006.  Regarding request number 200504795, IPS has retrieved potentially responsive materials but, because the information concerns two other agencies, IPS must coordinate with those agencies regarding the potential release.  IPS anticipates that it will complete processing of request number 200504795 within the next few weeks.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this _14_ day of March 2006.

_Margaret G. Peppe_
Margaret G. Peppe