IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |   |
|---|---|---|
| CENTER FOR PUBLIC INTEGRITY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 1:05-cv-02313 (JDB) |
| U.S. DEPARTMENT OF STATE, | ) ) ) | |
| Defendant. | ) ) | |

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR AN OPEN AMERICA STAY OR FOR AN EXTENSION OF TIME**

**INTRODUCTION**

Defendant United States Department of State ("State Department") submits this reply memorandum in support of its motion for an Open America stay or for an extension of time, in order to address the arguments raised by plaintiff Center for Public Integrity ("CPI") in its opposition to the motion. As discussed in the defendant's memorandum in support of its motion for an Open America stay, the State Department is entitled to more time to complete processing because, while confronted with exceptional burdens – including increasing volumes of FOIA requests, increasing volumes of other requests, tripled declassification review duties, and substantial budget cuts – the Department has nonetheless made reasonable progress on its backlog under these circumstances and exercised due diligence on the plaintiff's requests. Indeed, the defendant is seeking this short stay only for the purpose of completing processing of CPI's most voluminous request– for over 10,000 pages of Country Operating Plans – having nearly completed six of the seven requests already. In the alternative, the Court may and should grant the defendant an extension of time before ordering

further briefing because the defendant has requested only a minimal amount of time reasonably necessary to complete the processing.

## ARGUMENT

I.  DEFENDANT HAS DEMONSTRATED EXCEPTIONAL CIRCUMSTANCES JUSTIFYING AN OPEN AMERICA STAY

First, CPI argues that the State Department cannot meet the standard for an Open America stay because it has not made "reasonable progress in reducing its backlog" within the last 12 months. Pl. Opp. 1-2. The 1996 amendments to the Freedom of Information Act state that an agency delay resulting even from only a "predictable agency workload of requests" can constitute "exceptional circumstances" justifying a stay if "the agency demonstrates reasonable progress in reducing its backlog of pending requests." See 5 U.S.C. § 552(a)(6)(C)(ii). (The statute does not address the role of "reasonable progress in reducing the backlog" when the agency has more than a predictable load.) Courts have generally found exceptional circumstances where the agency is making "good faith efforts" and excercising "due diligence" in processing the requests. See Open America v. Watergate Special Prosecution Force, 547 F.2d 605, 616 (D.C. Cir. 1976); Appleton v. FDA, 254 F. Supp. 2d 6, 8 (D.D.C. 2003). In Al-Fayed v. CIA, the Court explained that the amendments simply require more than a backlog alone to justify a stay: "[T]he amendments clearly contemplate that other circumstances, such as an agency's efforts to reduce the number of pending requests, the amount of classified material, the size and complexity of other requests processed by the agency, the resources being devoted to the declassification of classified material of the public interest and the number of requests for records by courts or administrative tribunals, are relevant to the Courts' determination

as to whether exceptional circumstances exist." Slip Op. at 5. Thus, backlog reduction is one of many factors to be considered in determining whether or not exceptional circumstances exist.

As explained in the defendant's opening memorandum, the State Department is facing far more than a predictable workload of FOIA requests. Plaintiff's brief demonstrates that the State Department's recent increase in FOIA requests was not predictable. The Department's FOIA requests were relatively stable from 1998 to 2003, with a high of 3,761 requests (2001), a low of 3,134 requests (2002), and a six-year average of 3,502 requests.[1] The number of requests received in fiscal years 2004 and 2005 (3,951 and 4,602, respectively) significantly exceeded both the prior six-year average (3,502) and the prior six-year high (3,761). In addition to an unpredictable increase in FOIA requests, agency personnel are responsible for constantly increasing Privacy Act requests, a deluge of requests from Congress, the courts and other agencies, and declassification duties that have recently tripled. See Def. Mem. 13-14. As previously explained, FOIA processing at the State Department is often particularly complex due to the sensitive nature of the information handled by the Department. See id. 13.[2]

---

[1] Given these figures, the number of requests processed by the Department in the year after the backlog reduction project ended in 2005 (3,870) was more than reasonable – had incoming request numbers remained at 1998-2003 levels, the Department's performance in 2005 would have resulted in a reduction in its FOIA backlog.

[2] Plaintiff's uncited assertion that the defendant's performance is "dismal" in comparison with other departments is wholly unjustified. See Pl. Opp. 1. The defendant's backlog is extremely modest and well-managed in comparison with other cabinet-level departments that routinely handle sensitive information. For example, the Department of Homeland Security had over 45,000 pending requests at the end of 2004 and over 82,000 pending requests at the end of 2005. The Department of Justice had 8,062 requests pending at the end of 2004 and 8,637 requests pending at the end of 2005. The Department of Defense had over 12,000 requests pending at the end of 2004 and almost 15,000 pending at the end of 2005. All 2005 Annual FOIA Reports can be accessed at http://www.usdoj.gov/04foia/fy05.html.

Furthermore, even if this Court should determine that these responsibilities are a "predictable workload," the State Department's backlog reduction is reasonable under these circumstances. Plaintiff errs in focusing only on the last twelve months. See Pl. Opp. 1-2. The statute does not require a focus on any particular timeframe, only "reasonable progress" under the circumstances. In Appleton v. FDA, for example, the Court did not require uniform backlog reduction and found reasonable progress and exceptional circumstances despite an increase in the backlog one year, by looking at annual figures for previous years. See 254 F. Supp. 2d 6, 8 (D.D.C. 2003) As explained in the opening memorandum, defendant has drastically cut the backlog since 2001, even taking into account the recent increase. See Def. Mem 3-5, 13-14. In addition to demonstrable longterm backlog reduction, the State Department has made longterm improvements to public access to information, such as by modernizing its website and making large volumes of information available online. See Def. Mem. 4, 14.

Such progress is reasonable in the face of budget cuts. The State Department has faced the winding up of the hugely successful backlog reduction task force and the loss of additional funding for FOIA requests.[3] In addition to the reasons given in the Declaration of Margaret Peppe, the 2005 Annual FOIA Report explains the recent increases thus:

> As previously reported, additional resources were allocated to the FOIA program for approximately two years beginning in FY 2002 to fund a project to improve response times, and reduce the request backlog. At the end of the project, IPS had surpassed its goal of closing 80 percent of all cases and closed nearly 85 percent. The backlog was reduced from 6,214 to below 2,000 cases at the end of FY 2004. At the end of FY 2005, the backlog had risen to about 2,700 cases. We believe this increase is due

---

[3] Contrary to plaintiff's insinuation, the State Department is not willfully cutting the resources devoted to FOIA processing. The bulk of the budget cuts (and associated personnel losses) between 2004 and 2005 are attributable to the winding down of the backlog reduction project/task force. IPS had received an additional $4 million in funding over a two-year period in order to complete this project. Peppe Decl. ¶ 9

to some long-term and short-term factors, including annual increases of 15 – 17 percent in the number of requests received since the initiation of the on-line FOIA request form on our website, which number increases to 19 – 26 percent if limited to FOIA/PA requests made directly to the Department. This has meant that, in a two-year period, the number of new direct FOIA/PA requests received by the Department has increased by about 50 percent. In addition, IPS experienced an eight (8) percent cut in its funding allotment for FY 2005, which is the allotment from which salaries of reviewer, technology and support staff are paid. IPS also has had to divert FOIA reviewer staff to work on systematic review in order to reach the mandatory deadline of Executive Order 12958 (Classified National Security Information) to review 25 year-old records by December 2006.

Despite the recent increase in the number of pending requests, an increase driven by reduced resources, the defendant's backlog is roughly half what is was at the beginning of 2002 despite a substantial increase (about 50%) in the number of requests received.

In sum, despite significant new burdens on very limited resources, the defendant has achieved longterm reduction of its backlog; this is more than sufficient to justify a finding of "exceptional circumstances" justifying the very short stay requested. Furthermore, plaintiff has not disputed the other element of the Open America standard – that defendant has exercised due diligence in processing its requests. The defendant has requested only until June 30, 2006 to complete the review and redaction of the over 10,000 pages of Country Operating Plans at issue without unfairly diverting resources from other requesters waiting their turn.[4] Given the very short amount of time requested

---

[4] Furthermore, plaintiff has refused to agree to a reasonable timeframe for the processing of all of its requests, an important factor to consider in whether exceptional circumstances exist. See 5 U.S.C. § 552(a)(6)(C); Al-Fayed, slip. op. at 6. The defendant's planned completion date of June 30, 2006 with documents produced on a rolling basis, is the earliest praticable timeline to which the agency can agree without unfairly prejudicing other requesters. See Peppe Decl. ¶ 85. Having informed the plaintiff that the Country Operating Plans filled two banker's boxes of double-sided pages, the defendant did not consider the plaintiff's offer of mid-April to be reasonable. See Pl. Opp. 3. The Country Operating Plans were first sent to IPS for processing in February, and June 30, 2006 is a more than reasonable estimate for the time-consuming task. See Peppe Decl. at ¶¶ 51-52, 54.

and the conceded diligence of the defendant, the standard for an <u>Open America</u> stay is amply satisfied.

II.     IN THE ALTERNATIVE THE STATE DEPARTMENT SHOULD BE GRANTED AN EXTENSION OF TIME UNTIL JUNE 30, 2006 BEFORE SETTING A BRIEFING SCHEDULE

Finally, the Court can and should grant the defendant an extension of time regardless of whether or not the <u>Open America</u> standards have been met. As the plaintiff acknowledges, the Court has authority to manage the proceedings before it. <u>See</u> Pl. Opp. 3; Def. Mem. 16-17. As explained in defendant's opening memorandum, the amount of time requested by the defendant in this case is very short in comparison to other cases where stays have been granted. <u>See</u> Def. Mem 16. Moreover, defendant has exercised demonstrable diligence by producing nearly a thousand pages already in response to plaintiff's related requests. Plaintiff does not now attempt, nor has it ever attempted, to demonstrate any special urgency in this matter or prejudice caused by a delay. Accordingly, the Court should grant an extension of time in order to allow the defendant to complete processing of this request before the parties set a briefing schedule.

## CONCLUSION

For the foregoing reasons, this Court should grant the defendant's Motion For a Stay of Proceedings until June 30, 2006 or, in the alternative, extend the deadline for scheduling dispositive motions.

Dated: March 31, 2006                           Respectfully submitted,

                                                              PETER D. KEISLER
                                                              Assistant Attorney General

                                                              KENNETH L. WAINSTEIN
                                                             United States Attorney

                                                              ARTHUR R. GOLDBERG

Assistant Director  
Federal Programs Branch

/s/Amy E. Powell  
AMY E. POWELL  
Attorney (NY Bar)  
U.S. Department of Justice  
Civil Division, Federal Programs Branch  
20 Massachusetts Avenue, N.W.  
Washington, D.C. 20530  
Telephone: (202) 514-9836  
Facsimile: (202) 616-8202  
Email: amy.powell@usdoj.gov