UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CENTER FOR PUBLIC INTEGRITY,**<br><br>   **Plaintiff,**<br><br>   v.<br><br>**UNITED STATES DEPARTMENT OF STATE,**<br><br>   **Defendant.** | Civil Action No.  05-2313 (JDB) |

### MEMORANDUM OPINION

Plaintiff brings this action against defendant Department of State pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to compel the disclosure of records responsive to seven FOIA requests.[1]  Defendant has moved for an Open America stay of proceedings until June 30, 2006 or, in the alternative, an extension of time until the same date, to allow for the completion of its response to plaintiff's FOIA requests.

### BACKGROUND

In September and October 2005, plaintiff submitted seven FOIA requests to the State Department seeking records pertaining to the President's Emergency Plan for AIDS Relief ("PEPFAR"), certain records relating to U.S. Global AIDS Coordinator Ambassador Randall L. Tobias, and two electronic information systems used by the Department for budget planning.  The Department has completed processing for five of the requests and anticipates completion of another request in the coming weeks.  Thus, only one request gives rise to the present motion.  This request seeks the following documents:

---

[1] Plaintiff also named as defendants the Department of Health and Human Services and the U.S. Agency for International Development, alleging that they failed to respond to separate FOIA requests.  The claims against those defendants have been dismissed pursuant to stipulation of the parties.  See Order (Feb. 22, 2006); Minute Order (Feb. 24, 2006).

> The Country Operating Plans for all 15 countries receiving funding from [PEPFAR]. This includes "activities to be implemented during the fiscal year, along with the associated activity descriptions, funding levels, indicator targets and implementing partners," as described under the Emergency Plan Country Operational Plan and Reporting System (COPRS), page 121, in Pepfar's First Annual Report to Congress.

Def.'s Mem., Ex. A., Att. No. 1. The request also states that data about those countries' "implementing partners" should include lists of organizations funded through PEPFAR in each of the 15 countries. Id. The Department describes the Country Operating Plans as "detailed financial and policy planning documents for a large international grant program." Def.'s Mem. at 6.

The Department has submitted the declaration of Margaret G. Peppe, Deputy Director of the Department's Office of Information Programs and Services ("IPS"), the official currently responsible for responding to FOIA requests, to describe the processing of this and other FOIA requests and to justify its request for additional processing time. Def.'s Mem., Ex. A ("Peppe Decl."). She states that, on or about February 6, 2006, the office with responsive records completed its review and transmitted over 10,000 pages of potentially responsive records to IPS. Peppe Decl. ¶ 51. She estimates that, in the exercise of due diligence, the processing of this FOIA request, including determinations as to privilege, privacy, and appropriate redactions, will be completed by no later than June 30, 2006.[2] Id. ¶¶ 35-40, 85. As discussed in more detail below, she believes there are "exceptional circumstances" that warrant the additional time.

---

[2] The Department also notes that on or about February 17, 2006, plaintiff submitted a "clarification" to its original request, stating that the Department's response "should include production of all responsive records from the Country Operational Plan and Reporting System (COPRS)," a web-based information system, and suggested that the COPRS database itself should be produced. Peppe Decl. ¶ 53 and Att. No. 4. Defendant states that its current projected completion date of June 30, 2006 does not include the production of the COPRS records because its initial search retrieved a complete set of responsive records. Because the record is incomplete on the subject of COPRS, the Court makes no judgment at this time as to the Department's FOIA obligations with regard to COPRS, including the scope, if any, of a duty to search that database.

## DISCUSSION

Pursuant to FOIA, when an agency receives a request for records, it is required to determine within 20 working days of the date of receipt "whether to comply with such request" and to "immediately notify the person making such request of such determination and the reasons therefor."  5 U.S.C. § 552(a)(6)(A)   In certain enumerated "unusual circumstances," the agency may extend this time by an additional 10 working days.  Id. § 552(a)(6)(B).  If an agency does not respond within the statutory time limit, the requester shall be deemed to have exhausted his administrative remedies (id. § 552(a)(6)(C)), and the requester may file an action in court pursuant to § 552(a)(4)(B).

To address the concern that these deadlines might prove unworkable, the statute includes a "safety valve" provision authorizing a stay of judicial proceedings to allow the agency time to complete its records review under certain circumstances.  See Open America v. Watergate Special Prosecution Force, 547 F.2d 605, 610 (D.C. Cir. 1976).  This provision states:

> If the Government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time to complete its review of the records.

5 U.S.C. § 552(a)(6)(C)(i).  Open America held that "exceptional circumstances" exist when an agency "is deluged with a volume of requests for information vastly in excess of that anticipated by Congress, when the existing resources are inadequate to deal with the volume of such requests within the time limits of subsection (6)(A), and when the agency can show that it 'is exercising due diligence' in processing the requests."  547 F.2d at 616.  The D.C. Circuit further observed that "the good faith effort and due diligence of the agency to comply with [FOIA requests] in as short a time as is possible by assigning all requests on a first-in, first-out basis, except those where exceptional need or urgency is shown, is compliance with the Act."  Id.  In the Electronic

Freedom of Information Act Amendments of 1996, Congress limited the meaning of "exceptional circumstances" to exclude "a delay that results from a predictable agency workload of requests under this section, unless the agency demonstrates reasonable progress in reducing its backlog of pending requests."[3] 5 U.S.C. § 552(a)(6)(C)(ii). The legislative history states that Congress intended the amendments to be "consistent with the holding in Open America," and sought only to "clarify that routine, predictable agency backlogs for FOIA requests do not constitute exceptional circumstances." See H.R. Rep. No. 104-795, at 24 (1996), reprinted in 1996 U.S.C.C.A.N. 3448, 3467. Thus, cases subsequent to the amendments have continued to hold that, where an agency is making good faith efforts and exercising due diligence in processing requests on a first-in, first-out basis, a stay of proceedings is authorized so long as the agency also demonstrates "reasonable progress in reducing its backlog of pending requests." See, e.g., Appleton v. FDA, 254 F. Supp. 2d 6, 9-10 & n.4 (D.D.C. 2003); Wilderness Soc'y v. United States Dep't of the Interior, 2005 WL 3276256, *6 (D.D.C. 2005). It also has been recognized, based on that legislative history, that other circumstances in addition to FOIA request backlogs may be a basis for finding exceptional circumstances, including "resources being devoted to the declassification of classified material of public interest, and the number of requests for records by courts or administrative tribunals." See Wilderness Soc'y, 2005 WL 3276256, *6 (citing H.R. Rep. No. 104-795, at 24).

The Department submits that the Peppe declaration demonstrates the existence of "exceptional circumstances" and "reasonable progress" in reducing the backlog of pending

---

[3] The amendments also provide that "[r]efusal by a person to reasonably modify the scope of a request or arrange an alternative time frame for processing the request (or a modified request) under clause (ii) after being given an opportunity to do so by the [responding] agency . . . shall be considered as a factor in determining whether exceptional circumstances exist . . . ." 5 U.S.C. § 552(a)(6)(C)(iii).

requests. In 2002, the State Department had a backlog of over 6,000 FOIA requests.[4] Id. ¶ 7. In response, the Department undertook several backlog reduction initiatives, including a temporary backlog reduction task force supported by $4 million in funding and 23 full-time staff for a two-year period. Id. ¶¶ 7-9. The Department also has upgraded the technology used in its information management and access programs, including a comprehensive database of communications with overseas posts and an electronic inventory of responses to prior FOIA requests, as well as access to documents through the Internet.[5] Id. ¶¶ 12-18.

By the end of fiscal year 2004 (when the task force term was complete), IPS had completed more than 11,500 requests, and reduced the Department's overall FOIA backlog from 6,214 to fewer than 2,000 cases. Id. ¶ 11. The Department's backlog has risen since then, however, to 3,400 requests as of February 24, 2006. Id. In Peppe's view, the increase was due to a number of unforeseen circumstances. First, in fiscal year 2004, the number of new direct FOIA and Privacy Act requests increased by 19 percent, and in fiscal year 2005, those numbers increased by an additional 26 percent over the previous year, resulting in a 50 percent increase in that two-year period. Id. ¶ 43. Excluding the Privacy Act requests, the FOIA requests alone increased from 3,438 to 3,951 in fiscal year 2004 (an increase of 14.9 percent), and then to 4,602

---

[4] Peppe states that there were 6,214 pending requests at the end of fiscal year 2001. Peppe Decl. ¶ 11. The Department's brief indicates that the number was actually 6,845 -- the number reported in the FOIA annual report for fiscal year 2002. Def.'s Mem. at 3. The change was apparently "[d]ue to a change in the tracking of non-perfected/perfected requests." Department of State, FOIA Annual Report Fiscal Year 2002, at 3 (available at http://foia.state.gov). The Court will use the number in the Peppe declaration, although the exact number is not material to resolution of defendant's motion.

[5] The State Archiving System, a full-text searchable database of 28 million records, covers all significant substantive reporting between the Department and overseas posts, and the Freedom of Information Document System provides employees access to prior FOIA requests and the inventory of responsive documents. Peppe Decl. ¶ 15. The Department website provides the public with electronic access to over 60,000 documents considered to be of historical and general public interest, and permits the filing of FOIA requests on-line. Id. ¶¶ 16-18.

in fiscal year 2005 (an increase of 16.5 percent).  See Department of State, FOIA Annual Report 2004, at 5; Department of State, FOIA Annual Report Fiscal Year 2005, at 12 (available at http://foia.state.gov).

Peppe also explains that IPS's other responsibilities have increased during this same period.  These include "complex, time-sensitive, and time-consuming document demands from Congress, criminal prosecutors and other investigative bodies, and pursuant to court order." Peppe Decl. ¶ 44.  Peppe states that there are currently 79 such requests, including, within the last year, requests from Congress and other federal agencies regarding the United Nations' former Oil-for-Food program involving over 60,000 pages of responsive records and another Congressional request regarding "harm reduction, drug legalization, and the Soros network of foundations" involving over 80,000 pages of responsive records.  Id. ¶ 45.  IPS also has tripled its record review rate in its systematic review program to declassify historical records, in order to meet a December 31, 2006 declassification deadline under Executive Order 12958.  Id. ¶ 46. Peppe also emphasizes that, despite the increased demands on information access services, the IPS budget for information access programs has decreased from $10.3 million in fiscal year 2004, to $8.6 million in fiscal year 2005, and to $8.3 million in fiscal year 2006.  Id. ¶ 47.

The Department processes requests on a first-in, first-out basis, with two tracks -- simple/fast and routine/complex.  Id. ¶¶ 20-21.  Peppe estimates that, under this system, the request at issue -- designated "routine/complex" -- will be completed by no later than June 30, 2006. Expedition of requests "necessarily works to the disadvantage of other requesters whose requests were filed earlier," so the Department does so only when a "compelling need" is shown. Id. ¶¶ 22-23.

The Court agrees that the Peppe declaration readily suffices, in most respects, to make the

demonstration required to justify a stay for "exceptional circumstances" -- the agency is burdened with voluminous requests for information, the existing resources are inadequate to deal with the volume of requests within the statutory time limits, the agency is acting in good faith and exercising due diligence, and the agency is processing the request in as short a time as possible under a first-in, first-out system.  The only issue plaintiff places in dispute is whether the Department has demonstrated "reasonable progress in reducing the backlog of pending requests," pursuant to § 552(a)(6)(C)(ii).

Plaintiff contends that the requested stay should not be granted because the increase in the backlog of pending requests from fiscal year 2004 to February 2006, standing alone, shows that the Department has failed to demonstrate reasonable progress.  Plaintiff has compiled the following data from the Department's annual FOIA reports to illustrate the absence of reasonable progress during the last two fiscal years, in contrast to prior years:

| Fiscal Year | Pending at year start | Received | Processed | Pending at year end | Backlog as a percentage of yearly processing | Median no. of days to process routine/complex requests |
|---|---|---|---|---|---|---|
| 1998 | 4,311 | 3,355 | 2,317 | 5,349 | 231% | 333 |
| 1999 | 5,349 | 3,716 | 3,824 | 5,241 | 137% | 308 |
| 2000 | 5,241 | 3,611 | 3,070 | 5,782 | 188% | 694 |
| 2001 | 5,782 | 3,761 | 3,329 | 6,214 | 187% | 742 |
| 2002 | 6,845 | 3,134 | 4,636 | 5,343 | 115% | 432 |
| 2003 | 5,343 | 3,438 | 5,773 | 3,008 | 52% | 671 |
| 2004 | 3,008 | 3,951 | 4,963 | 1,996 | 40% | 209 |
| 2005 | 1,996 | 4,602 | 3,870 | 2,728 | 70% | not available |

Pl.'s Opp. Mem. at 2 (citing U.S. Department of State, Freedom of Information Act Annual

Reports, available at http://foia.state.gov). Plaintiff focuses on the number of requests pending at the end of fiscal years 2004 and 2005, which show an increase from 1,996 pending requests to 2,728. Plaintiff also points out that the backlog has further increased to 3,400 in the first five months of the current fiscal year (i.e., February 2006).

The Department contends that, despite the recent increase in the backlog of pending requests, it has demonstrated "exceptional circumstances" because a reduction in the backlog is not required where there is an unpredictable increase in FOIA requests. As a general matter, the Court agrees that to the extent an agency is unable to reduce its backlog due to an unpredictable increase in the number of FOIA requests, the 1996 amendments do not disqualify an agency from an Open America stay of proceedings. This is because the amendments link the requirement to demonstrate "reasonable progress" to those cases where an agency claims exceptional circumstances based on "predictable agency workload." See 5 U.S.C. § 552(a)(6)(C)(ii) (emphasis added). The legislative history contemplates that where an agency faces an "unforeseen" increase in FOIA requests and the request for a stay is not based on a "routine backlog," a stay may be justified notwithstanding the lack of a reduction in the backlog. See H.R. Rep. 104-795, at 24.

Whether, in this case, the workload was "unforeseen" and something other than "routine" is a close call. As the Department points out (Reply Mem. at 3 n.1), its performance in 2005 would have resulted in a continued reduction of its FOIA backlog, if there had not been an increase in FOIA requests during fiscal years 2004 and 2005 -- a strong indicator that the increase in the backlog of pending requests was due to an unexpected increase in requests during those years. On the other hand, the increase in FOIA requests for those years was not overwhelming (14.9 percent and 16.5 percent, respectively), and the Court is concerned about the substantial

growth in the backlog (from 2,728 to 3,400) since the end of fiscal year 2005. Indeed, part of the explanation for the recent increase in the backlog (putting aside the expiration of the task force term) is the decrease in the budget for FOIA processing -- such a decrease will, predictably, contribute to a backlog. But, on the whole, weighing the increase in the number of FOIA requests for the two most recent fiscal years and also the unforeseen increase in IPS's other information access duties, including the increase in Privacy Act requests, requests from Congress, and declassification review duties, the Court concludes that the increase in the workload was not "predictable," and thus, that the "reasonable progress" requirement does not apply here.[6]

The Department also contends that, even if the current volume of FOIA requests constitutes a "predictable workload," it has demonstrated the requisite "reasonable progress" in reducing its backlog. It notes that § 552(a)(6)(C)(ii) does not specify any particular timeframe for assessing reasonable progress, and thus reasons that the Court may look to whether the agency has achieved a long-term backlog reduction over a period of years. The Department contends that the reduction in the backlog from its 2001 level (when the backlog was at a five-year high of 6,214 pending requests) to the current level of about 3,400 pending requests represents "reasonable progress," even taking into account the recent increase.

The Court agrees that it is reasonable to look beyond a single year in determining whether an agency has made reasonable progress. See Appleton, 254 F. Supp. 2d at 10. The problem with the Department's approach, however, is that it potentially allows the agency to claim "reasonable progress" as long as its backlog remains below peak levels, giving the agency little

---

[6] It bears noting, however, that if the number of FOIA requests remains constant and the backlog increases -- a situation that appears likely in light of the Department's recent budgetary reductions for FOIA processing -- the Department will have difficulty justifying future requests for an Open America stay.

incentive to avoid backsliding.  It would be anomalous to incorporate a loophole into the reasonable progress requirement that would create such a disincentive.  See H.R. Rep. 104-795, at 24 ("exceptional circumstances" should not create "a disincentive for agencies to clear up those backlogs").  The Court declines to apply that approach, but agrees that, looking at the last five years (that is, since the backlog reduction initiatives were implemented), the Department has demonstrated reasonable progress sufficient to support the modest three-month stay requested.  From fiscal year 2001 to fiscal year 2004, the backlog of pending requests was reduced each year, and the reduction would have continued through fiscal year 2005 had it not been for the unexpected increase in requests that year.  See Peppe Decl. ¶¶ 7-11; Def.'s Reply Mem. at 3 n.1.  Although the backlog has increased in the first five months of the current fiscal year, the Court finds that this increase is not, by itself, sufficient to negate the overall progress shown to date.

## CONCLUSION

For the foregoing reasons, the Court grants defendant's motion for a stay of proceedings until June 30, 2006.  A separate order is issued herewith.

/s/
JOHN D. BATES
United States District Judge

Date:   April 24, 2006

-11-

Copies to:

Peter Newbatt Smith
CENTER FOR PUBLIC INTEGRITY
910 17th Street, NW
Washington, DC 20006-2606
Email: psmith@publicintegrity.org
    *Counsel for Plaintiff*

Amy Powell
U.S. DEPARTMENT OF JUSTICE
Civil Division -- Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, DC 20530
Email:amy.powell@usdoj.gov
    *Counsel for Defendant*